PEATROSS, J.
 

 | defendant, Randy C. Marshall, was convicted of second degree murder in violation of La. R.S. 14:30.1 and sentenced to a term of life imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence. Defendant now appeals. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.
 

 FACTS
 

 On April 6, 2005, Defendant and his friend and high school classmate at the time, Cordero Campbell, discussed a plan
 
 *1055
 
 to rob a man
 
 [1]
 
 who they believed had money. Defendant then contacted another friend, Renando Johnson, and asked him to help with the robbery. Defendant and Campbell skipped school that afternoon and waited at a local supermarket for Johnson to pick them up. Johnson arrived in a Crown Victoria and the trio drove to the man’s house to observe him prior to the intended robbery. While the trio waited in the car, Johnson gave Defendant and Campbell a .38-caliber revolver and a 380 semi-automatic handgun to use during the robbery.
 

 A little while later, the man left his home and went to Moham’s Tire Shop and the trio followed him. Defendant, Campbell and Johnson developed a plan whereby Defendant and Campbell would attempt to enter the tire shop under the ruse of getting an inner tube fixed. Once inside, they would demand that everyone get down on the floor so they could determine where the man they had followed to the shop was hiding the money. The plan failed, however, and Defendant and Campbell were not able to gain entry into the shop. Accordingly, Defendant and Campbell revised their plan and | .¿decided to simply force their way into the shop and rob anyone who happened to be inside.
 

 Meanwhile, inside of the shop, Hoyle Moham, Santanion Dixon, Willie Pryor, Curtis Lewis, Charlie Lewis, Fred Jefferson, Milton Jackson and Benner Washington were playing a game of dominoes. Moham and Jackson, the two men who initially refused to allow Defendant and Campbell to enter the shop, were standing in the garage door of the shop when Defendant and Campbell entered the garage area. Defendant and Campbell held Mo-ham and Jackson at gunpoint and Campbell told them that they were being robbed and demanded to be led into the shop. Once inside the shop, Campbell demanded that the men get down on the floor and place all the money they had on the floor beside them.
 

 While Campbell was recovering the money placed on the floor and Defendant was standing by in the rear area of the building, Charlie Lewis (“Charlie”) stabbed Defendant in his ankle and his side. Defendant then shot Charlie five times with the .38-caliber revolver: once in the chest, shoulder and arm and twice in the back. Defendant and Campbell then exited the shop through the back door of the building. After Defendant and Campbell had left the shop, the men inside called the police and an ambulance. When paramedics arrived at the crime scene, Charlie was nonresponsive and later died at the hospital as the result of multiple gunshot wounds. The police recovered a little over $200 from Charlie’s pocket.
 

 During this time, Johnson drove Defendant and Campbell to a local park where Campbell split the money from the robbery with Defendant, but|sJohnson did not receive a share of the money. Campbell gave his handgun to Johnson, but kept Defendant’s handgun since Johnson refused to take it because the gun had been involved in a murder.
 

 Campbell put Defendant’s handgun in a trash can in the park and then called the police and the paramedics. In order to get medical treatment for Defendant’s stab wounds, Campbell and Defendant told the police and paramedics that Defendant had been robbed in the park and that he was stabbed by the would-be robber after Defendant refused to give up his money. Defendant was transported to the hospital where he was treated. Campbell was not
 
 *1056
 
 questioned by the officers regarding the fictitious park robbery story and went home. Campbell later returned to the park and retrieved the handgun. He attempted to sell the weapon, but was unsuccessful and hid it inside a shoe box in his home.
 

 While canvassing the neighborhood of Moham’s Tire Shop after the robbery, police officers learned from witnesses that Defendant and Campbell fled the scene of the crime in the Crown Victoria driven by Johnson. Accordingly, the police questioned Johnson, who informed them of Campbell’s involvement. The police then questioned Campbell, who revealed Defendant’s involvement in the crime as well as the location of the handgun hidden in Campbell’s home. When the officers arrested Defendant at his home, Defendant told his father that he was being arrested because he had shot someone. Defendant also told the officers that the handgun was in the park trash can, but the gun was no longer there when the officers went to the park to retrieve it.
 

 14Subsequent to his arrest, Defendant was questioned twice by police officers. During his first interrogation, after being informed of his rights, Defendant told officers that he shot Charlie in self-defense after Charlie had stabbed him for refusing to return Charlie’s money that he had won in a domino game. In his second interrogation, after being informed of his rights again, Defendant admitted that he and Campbell robbed the men in the tire shop while they were playing a game of dominos and that, during the robbery, Charlie stabbed Defendant who then shot Charlie “three or four” times. Police then placed Defendant into custody.
 

 While in jail, Defendant and Campbell discussed a strategy to explain the shooting. Defendant wrote, and Campbell signed, an affidavit which stated that Charlie stabbed Defendant out of anger for winning his money in a dominos game and that Defendant only confessed to the shooting because he was forced to do so by the police. Defendant later revised the affidavit to state that Campbell had shot Charlie in defense of Defendant. None of the victims of the robbery could identify Defendant or Campbell in a photographic lineup.
 

 On May 11, 2005, a bill of indictment was filed charging Defendant with the second degree murder of Charlie Lewis as defined by La. R.S. 14:30.1. During a hearing on the Motion to Suppress filed by then co-defendant Campbell,
 
 [2]
 
 Defendant’s trial counsel attempted to suppress Defendant’s confession, arguing that there was no evidence in the record to ^explain why Defendant' changed his self-defense story in the first interrogation to a murder confession in the second interrogation. Defense counsel asserted that one or more of the officers must have employed improper interrogation tactics to coerce Defendant into confessing to the murder during the second interrogation. The trial court, however, denied Defendant’s request to suppress the confession, finding that there was no evidence in the record to suggest that anything improper took place during the interrogation of Defendant.
 

 The State offered Defendant a plea agreement whereby he would serve a term of 32 years’ imprisonment if he pled guilty to manslaughter, but Defendant rejected the offer. After a bench trial, the court found Defendant guilty as charged of second degree murder. Defendant’s trial
 
 *1057
 
 counsel filed a motion for new trial and a post-verdict judgment of acquittal, both of which were denied by the trial judge, who then ordered that Defendant serve the mandatory sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. This appeal ensued.
 

 DISCUSSION
 

 Assignment of Eiror Number One (verbatim):
 
 The evidence introduced at trial was insufficient to find Randy Marshall guilty of second degree murder. Therefore, the trial court erred in denying his Motion for Directed Verdict, Motion of Judgment of Acquittal, Motion for New Trial and Motion for Post Verdict Judgment of Acquittal.
 

 Pro se Assignment of Eiror Number One (verbatim):
 
 Insufficient Evidence. The appellant contends that his conviction should be reversed because the state failed to prove each and every element of the crime charged, specifically arguing that the state failed to prove the
 
 corpus delicti
 
 of felony-murder as the commission of armed robbery was never established. Appellant contends that, even with his statements, the state failed to establish his guilt beyond a reasonable doubt, as all evidence other than appellant’s 1 ^statements is circumstantial and the state failed to exclude every hypothesis of innocence.
 

 The State supports the conviction, arguing that the evidence is sufficient to sustain the second degree murder conviction because it showed that (1) Charlie was killed during an armed robbery and (2) Defendant had the specific intent to kill or inflict great bodily harm, as evidenced by the fact that he shot Charlie five times. The State also contends that Defendant is precluded from claiming self-defense in this case because he was the aggressor as defined under La. R.S. 14:21.
 

 Defendant asserts that the State did not prove that he committed the armed robbery of Charlie because the evidence does not show that Defendant took or attempted to take anything of value from Charlie. Defendant further asserts that the evidence proves that Defendant was attempting to leave the shop when Charlie stabbed him and that he shot Charlie in a reaction of self-defense to the stabbing.
 

 In his pro
 
 se
 
 brief, Defendant argues that the evidence is insufficient to support his second degree murder conviction because it shows that Campbell was the one who ordered the victims to the floor during the robbery and to give up their money, and it was Campbell who took them money. Defendant also points out that nothing of value was taken from Charlie.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.5/20/03),7 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Cummings,
 
 95-1377 (La.2/28/96), 668 So.2d 1132;
 
 State v. Murray,
 
 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488,
 
 writ denied,
 
 02-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v.
 
 
 *1058
 

 Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to the fact finder’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence.
 
 Jackson v. Virginia, supra.
 
 An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.
 
 Id.
 
 When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the
 
 crime. State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 07-2053 (La.3/7/08), 977 So.2d 896;
 
 State v. Owens,
 
 30,903 (La.App.2d8 Cir.9/25/98), 719 So.2d 610,
 
 writ denied,
 
 98-2723 (La.2/5/99), 737 So.2d 747.
 

 An accomplice is a competent witness to testify against his co-perpetrator even if the prosecution offers him inducements to testify.
 
 State v. Jetton,
 
 32,-893 (La.App.2d Cir.4/5/00), 756 So.2d 1206,
 
 writ denied,
 
 00-1568 (La.3/16/01), 787 So.2d 299. These inducements go to the weight of the witness’s credibility.
 
 Id.
 
 The assessment of the credibility of an accomplice’s testimony is a determination to be made by the trier of fact and, thus, not within the province of the court of appeal to decide.
 
 Id.
 
 The fact finder may accept or reject the testimony of any witness in whole or in part and the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 A witness’s failure to identify the suspect at a pretrial lineup does not constitute grounds to bar an in-court identification, but, rather, goes to the weight of that witness’s testimony; evidence may be introduced to explain any discrepancy.
 
 State v. Long,
 
 408 So.2d 1221 (La.1982);
 
 State v. Ford,
 
 26,422 (La.App.2d Cir.9/21/94), 643 So.2d 293;
 
 State v. Chism,
 
 591 So.2d 383 (La.App. 2d Cir. 1991).
 

 Second degree murder is defined as the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. Evidence that a defendant shot the victim multiple times may be used to show that the defendant had the culpable state of mind to kill or | ¿inflict great bodily harm on the victim.
 
 State v. Vance,
 
 544 So.2d 41 (La.App. 2d Cir.1989),
 
 writ denied,
 
 551 So.2d 1317 (La.1989). Second degree murder is also defined as the killing of a human being when the offender was engaged in or was attempting to engage in armed robbery, even though he has no intent to kill or inflict great bodily harm. La. R.S. 14:30.1.
 

 Armed robbery is the taking of anything of value belonging to another from the person of another by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. The State may also prove that a defendant is guilty of armed robbery by showing that the defendant served as a principal to the crime. La. R.S. 14:24;
 
 State v. Durden,
 
 36,842 (La.App.2d Cir.4/9/03), 842 So.2d 1244,
 
 writ denied,
 
 03-1350 (La.11/26/03), 860 So.2d 1131;
 
 State v. Allen,
 
 36,180 (La.
 
 *1059
 
 App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 02-2595 (La.3/28/03), 840 So.2d 566; 02-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004);
 
 State v. Smith,
 
 513 So.2d 438 (La.App. 2d Cir.1987). Under this theory, the defendant need not actually take anything or have personally held a weapon to be guilty of armed robbery.
 
 State v. Durden, supra; State v. Allen, supra, citing State v. Dominick,
 
 354 So.2d 1316 (La.1978). A person who aids and abets another in a crime by participating in the planning or execution of that crime is liable to the same extent as the person who directly commits the crime, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial.
 
 State v. Durden, supra; State v. Watson,
 
 10397 So.2d 1337 (La.1981),
 
 cert. denied,
 
 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981).
 

 Self-defense is justification for a killing only if the person who committed the homicide reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm and that his use of deadly force was necessary to save his life. La. R.S. 14:20(1);
 
 State v. Dooley,
 
 38,763 (La.App.2d Cir.9/22/04), 882 So.2d 731,
 
 writ denied,
 
 04-2645 (La.2/18/05), 896 So.2d 30;
 
 State v. Cotton,
 
 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937.
 

 When self-defense is raised as an issue by a defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense.
 
 State ex rel. D.P.B.,
 
 02-1742 (La.5/20/03), 846 So.2d 753;
 
 State v. Garner,
 
 39,731 (La.App.2d Cir.9/8/05), 913 So.2d 874,
 
 writ denied,
 
 05-2567 (La.5/26/06), 930 So.2d 19;
 
 State v. Gaddis,
 
 36,661 (La.App.2d Cir.3/14/03), 839 So.2d 1258,
 
 writ denied,
 
 03-1275 (La.5/14/04), 872 So.2d 519,
 
 cert. denied,
 
 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005). WOien the defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense.
 
 State v. Matthews,
 
 464 So.2d 298 (La.1985).
 

 Evidence of a person’s character is generally inadmissible to prove that he acted in conformity therewith. La. C.E. art. 404(A). One exception to this eviden-tiary rule is where the defendant claims self-defense in a homicide case |nand at issue is the defendant’s state of mind and whether the deceased was the aggressor. In such a case, evidence of the victim’s dangerous character or threats against the accused is relevant because it tends to show that the victim was the aggressor and the defendant’s apprehension of danger was reasonable.
 
 State v. Edwards,
 
 420 So.2d 663 (La.1982);
 
 State v. Washington,
 
 30,043 (La.App.2d Cir.1/23/98), 706 So.2d 203;
 
 State v. Montz,
 
 92-2073, (La. App. 4th Cir.2/11/94), 632 So.2d 822,
 
 writ denied,
 
 94-0605 (La.6/3/94), 637 So.2d 499.
 

 As a condition of admissibility, the defendant must produce evidence that, at the time of the incident, the victim made a hostile demonstration or committed an overt act against the defendant. The term “overt act” in this instance means any act of the victim which manifests to the mind of a reasonable person that the victim has the present intent to kill or to do great bodily harm.
 
 State v. Edwards, supra; State v. Lee,
 
 331 So.2d 455 (La.1975);
 
 State v. Carter,
 
 550 So.2d 805 (La.App. 2d Cir.1989);
 
 State v. Hardeman,
 
 467 So.2d 1163 (La.App. 2d Cir.1985). The overt act must be directed at the accused.
 
 State v. Jones,
 
 451 So.2d 1181 (La.App. 1st Cir. 1984).
 

 
 *1060
 
 Once appreciable evidence of an overt act or hostile demonstration is established, evidence of threats and of the victim’s dangerous character are admissible for two purposes: (1) to show the defendant’s reasonable apprehension of danger which would justify his conduct and (2) to help determine who was the aggressor in the conflict.
 
 State v. Edwards, supra; State v. Hardeman, supra.
 
 Under the “aggressor doctrine” as outlined in La. |12R.S. 14:21, a person who is the aggressor cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knew or should have known of his desire to withdraw and discontinue the conflict.
 

 We find that the evidence in the case
 
 sub judice
 
 is sufficient to support Defendant’s second degree murder conviction. Defendant admitted that he shot Charlie and forensic pathologist, Dr. James Tray-lor, Jr., testified that two bullets from a .38-caliber handgun were found in the body of Charlie. Additionally, Richard Beighley, a firearms specialist with the North Louisiana Crime Lab, testified that the bullets found in Charlie and at the crime scene matched the .38-caliber handgun used by Defendant in the robbery. Further, the evidence showing that Defendant shot Charlie five times indicates that Defendant had the specific intent to kill or inflict great bodily harm.
 
 See State v. Vance, supra.
 

 Additionally, had the State failed to prove Defendant’s specific intent to commit second degree murder, the evidence was sufficient to support Defendant’s second degree murder conviction under La. R.S. 14:30.1 because Defendant was engaged in an armed robbery at the time Charlie was killed. Moham, Dixon, Pryor and Campbell each testified that Defendant and Campbell entered the tire shop armed with handguns, that Campbell demanded money from the men inside the shop and that, once they were provided with the money, Defendant and Campbell left the shop. Although Campbell and Pryor testified that Defendant never spoke or made a verbal threat during the robbery, the evidence indicates that Defendant participated |13in the planning and execution of the robbery. Defendant, therefore, is considered a principal to the armed robbery and, thus, subject to conviction for the crime.
 
 See State v. Durden, supra; State v. Allen, supra.
 

 Defendant argues that an armed robbery was not committed against Charlie because approximately $200 was later recovered from Charlie’s body. We do not agree. Defendant’s own statements and the testimony of Campbell and several witnesses to the incident indicated that Charlie was in the shop at the time of the armed robbery. Furthermore, Campbell explained at trial that he and Defendant decided not to rob Charlie after Defendant shot Charlie. An
 
 attempt
 
 to commit armed robbery, however, is also an element of second degree murder. La. R.S. 14:30.1. Additionally, although Defendant argues that he was acting in self-defense when he shot Charlie, he is precluded from doing so under the aggressor doctrine because Defendant started the conflict,
 
 ie.,
 
 the armed robbery,' that prompted Charlie to stab him.
 

 This assignment is, therefore, without merit.
 

 Assignment of Error Number Two (verbatim):
 
 The trial court erred in admitting the autopsy report into evidence in this case and in allowing the expert opinion of Dr. Traylor, based on this report. In addition, Randy Marshall received ineffective assistance of counsel when his trial counsel failed to object to Dr. Traylor’s testimony and when he also failed to spe-
 
 *1061
 
 cifícally question the custodian of the record about the evidence of wrongdoings involving the author of the report, Dr. McCormick.
 

 Pro se Assignment of Error Number Two (verbatim):
 
 Ineffective assistance of counsel. The appellant argues that his trial counsel’s performance deprived him of the effective assistance of counsel, as mandated by the 6th amendment to the U.S. Constitution.
 

 Defendant argues that the trial court improperly admitted into evidence a draft autopsy report written by Caddo Parish Coroner Dr. George M. McCormick. It is Defendant’s position that, since Dr. McCormick died 114before finalizing the report and before trial began, he was denied his right to cross-examine Dr. McCormick in order to contest the conclusions made in the report. The State argues that the coroner’s report is excepted from the hearsay rule under La. C. Cr. P. art. 105; and, thus, Defendant’s right to cross-examination was not infringed upon. Additionally, the State points out that Defendant has not shown that he was prejudiced by the admission of the coroner’s draft report.
 

 Charlie’s certificate of death was signed by Dr. McCormick on April 28, 2005, and the cause of death listed on the certificate was multiple gunshot wounds. Dr. McCormick died in September 2005 before he had completed a final autopsy report of Charlie. After Dr. McCormick’s death, an unsigned draft autopsy report of Charlie containing markups from unknown persons was located.
 

 At trial, forensic pathologist Dr. Traylor testified as to Charlie’s cause of death. Dr. Traylor was asked to review the draft autopsy report to determine the accuracy of the findings contained therein by comparing the draft report with photos of Charlie taken before the autopsy. Dr. Traylor noticed an inaccuracy in the draft autopsy report with regard to whether certain wounds were entry or exit wounds, but he conceded that any well-trained pathologist would have caught the mistake before the publication of the final autopsy report. Dr. Traylor concluded that Charlie’s cause of death was exsanguination caused by multiple gunshot wounds.
 

 Defendant raised several objections to the admission into evidence of Dr. Tray-lor’s testimony and the draft autopsy report. Defendant argued that | <fithe draft autopsy report was inadmissible because there were no witnesses to testify as to the veracity of the report. The State countered that the draft autopsy report was properly admissible because it was relied upon by Dr. Traylor to determine Charlie’s cause of death. The trial court overruled Defendant’s objection, stating that it would defer to Dr. Traylor’s expertise to determine if the findings contained in the draft autopsy report were reliable.
 

 The coroner’s report and the report of an autopsy are used to prove the death and cause of death. La. C. Cr. P. art. 105. A defendant’s right to confront his witnesses is not violated when a coroner’s report is admitted without the testimony of the coroner as to the authenticity of the report and when the report is cumulative • evidence as to death and cause of death.
 
 State v. Russell,
 
 42,479 (La.App.2d Cir.9/26/07), 966 So.2d 154,
 
 writ denied,
 
 07-2069 (La.3/7/08), 977 So.2d 897.
 

 La. C.E. art. 703 addresses the facts and data upon which an expert can base his expert testimony. Article 703 provides:
 

 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the
 
 *1062
 
 subject, the facts or data need not be admissible in evidence.
 

 In
 
 State v. Beaner,
 
 42,532 (La.App.2d Cir.12/5/07), 974 So.2d 667,
 
 writ denied,
 
 08-0061 (La.5/30/08), 983 So.2d 896, this court developed an approach in addressing issues involving the practices of the Caddo Parish Coroner’s Office under Dr. McCormick prior to his death. The
 
 Beaner
 
 court determined that the admissibility of evidence from the coroner’s office would be viewed in light of admissions made by the defendant, testimony of other [ 1(iwitnesses and whether the evidence in the coroner’s report was dispositive of the question of the defendant’s guilt or innocence.
 

 In accordance with La. C.E. art. 703, it is permissible for Dr. Traylor to use as a basis for his expert testimony the facts and data contained in the draft autopsy report to determine Charlie’s cause of death. Given the overwhelming evidence in this case as to Charlie’s cause of death, the admission of the coroner’s draft report would not have changed Defendant’s guilty verdict at a second trial. Defendant admitted that he shot Charlie and all witnesses to Charlie’s murder testified that Defendant shot Charlie.
 

 Additionally, Defendant argues in this
 
 pro se
 
 assignment of error that, if this court finds that Defendant’s trial counsel did not make the requisite objections at trial to preserve all issues involving the wrongdoings of Dr. McCormick, then his trial counsel rendered ineffective assistance at trial. Defendant argues in his
 
 pro se
 
 brief that his trial counsel was ineffective because he did not argue Defendant’s allegation that it was Campbell who shot Charlie. The State argues, however, that Defendant’s trial counsel made the requisite objections at trial.
 

 Generally, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief (“PCR”) in the trial court. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930; a motion for new trial is also an acceptable vehicle by which to raise such a claim.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325. l^When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution.
 
 State v. Wry,
 
 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient.
 
 Strickland v. Washington, supra.
 
 This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment.
 
 Id.
 
 The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Id,.
 

 The assessment of an
 
 attorney’s
 
 performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence.
 
 Id.
 
 A reviewing court must give
 
 great
 
 deference
 
 to
 
 trial counsel’s
 
 *1063
 
 judgment, tactical decisions and trial strategy, strongly presuming that he has exercised reasonable professional judgment.
 
 State v. Grant,
 
 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823,
 
 writ denied,
 
 07-1193 (La.12/7/07), 969 So.2d 629;
 
 State v. Moore,
 
 575 So.2d 928 (La.App. 2d Cir. 1991);
 
 see also State v.
 
 %65
 
 18Tilmon,
 
 38,003 (La.App.2d Cir.4/14/04), 870 So.2d 607,
 
 writ denied,
 
 04-2011 (La.12/17/04), 888 So.2d 866.
 

 Second, the defendant must show that counsel’s deficient performance prejudiced his defense.
 
 Strickland v. Washington, supra.
 
 This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial,
 
 ie.,
 
 a trial whose result is reliable.
 
 Id.
 
 The defendant must prove actual prejudice before relief will be granted.
 
 Id.
 
 He must show that, but for counsel’s unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different.
 
 Strickland v. Washington, supra; State v. Pratt,
 
 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174,
 
 writ denied,
 
 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; •general statements and conclusory charges will not suffice.
 
 Strickland v. Washington, supra; State v. Jordan,
 
 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123,
 
 writ denied,
 
 02-1570 (La.5/30/03), 845 So.2d 1067.
 

 We find that Defendant’s trial counsel properly preserved all issues concerning the practices of Dr. McCormick by contemporaneously objecting at trial prior to the testimony of Dr. Traylor. The evidence further shows that trial counsel’s performance was not deficient. Trial counsel’s decision not to argue Defendant’s allegation that Campbell shot Charlie was a reasonable trial strategy given the evidence produced at trial indicating that it was not Campbell who shot Charlie, including Defendant’s confession, Defendant’s scheme to amend the affidavit and all eyewitness testimony to the murder.
 

 ImThis assignment of error is without merit.
 

 Assignment of Error Number Three (verbatim):
 
 The trial court erred in denying Randy Marshall’s Motion to Suppress based on the unexplained lapse of time between the two confessions.
 

 Defendant argues that his confession should have been suppressed because the State had no explanation for the hour-and-a-half time lapse between the Defendant’s first and second interrogations. The State argues that Defendant made no specific factual allegations as to tactics employed during Defendant’s interrogations to convince him to confess to Charlie’s murder during the second interview. The State further argues that, under
 
 State v. Blank,
 
 04-0204 (La.4/11/07), 955 So.2d 90,
 
 cert denied,
 
 — U.S. -, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007), a lengthy delay in interviewing Defendant does not serve to vitiate his consent.
 

 Before the State may introduce a confession into evidence, it must demonstrate that the statement was free and voluntary and not the product of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D);
 
 State v. Simmons,
 
 443 So.2d 512 (La.1983). If a statement is a product of custodial interrogation, the State must also show that the person was advised of his
 
 Miranda
 
 rights prior to the questioning.
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When claims of police misconduct are raised, the State must specifically rebut the allegations.
 
 State v. Vessell,
 
 450 So.2d 938 (La.1984).
 

 A trial court’s finding as to the free and voluntary nature of a statement
 
 *1064
 
 carries great weight and will not be disturbed unless not supported by the evidence.
 
 State v. Benoit,
 
 440 So.2d 129 (La.1983);
 
 State v. English,
 
 20582 So.2d 1358 (La.App. 2d Cir.1991),
 
 writ denied,
 
 584 So.2d 1172 (La.1991). Credibility determinations lie within the sound discretion of the trial court and its rulings will not be disturbed unless clearly contrary to the evidence.
 
 State v. Vessell, supra.
 
 When deciding whether a statement is knowing and voluntary, a court should consider the totality of circumstances under which the statement was made.
 
 State v. Lavalais,
 
 95-0320 (La.11/25/96), 685 So.2d 1048,
 
 cert. denied,
 
 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997);
 
 State v. Lewis,
 
 539 So.2d 1199 (La.1989);
 
 State v. Thomas,
 
 461 So.2d 1253 (La.App. 1st Cir.1984),
 
 writ denied,
 
 464 So.2d 1375 (La.1985). Inducements are to be viewed as merely one factor in the analysis.
 
 Id.
 
 Defendant has failed to make any specific allegations that his confession was improperly obtained. Although Defendant expressed concerns about the delay between the interviews, he never argued that any improper police conduct occurred. Additionally, the record clearly reflects that Defendant was informed of his rights prior to both police interviews. Since Defendant failed to raise specific allegations that would warrant relief, we find that the trial court did not abuse its discretion in denying Defendant’s request for suppression.
 

 This assignment of error is, therefore, without merit.
 

 CONCLUSION
 

 For the foregoing reasons, the conviction and sentence of Defendant, Randy C. Marshall, are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . During the police investigation, Defendant referred to the man as "this guy,” and the identity of the man is not revealed in the record.
 

 [2]
 

 . Defendant never filed a formal motion to suppress in this case. Defendant’s trial counsel made his argument for the suppression of Defendant’s confession by adopting the argument at the suppression hearing of then co-defendant Campbell.