MOORE, J.
 

 |, Jemario Freeman was charged by bill of information with armed robbery and attempted second degree murder arising from a robbery and shooting at a liquor store. After a bench trial, Freeman was found guilty on both counts and sentenced to 65 years at hard labor as a second felony offender on the armed robbery, and to a concurrent 45 years at hard labor on the attempted second degree murder. He now appeals his convictions and sentences; we affirm.
 

 Factual Background
 

 On the evening of October 6, 2004, two black men entered the Thrifty Liquor store on Hollywood Avenue at St. Vincent in Shreveport’s Caddo Heights neighborhood. The shorter man, wearing a black hat or hood, pulled a handgun and fired a shot into the ceiling. One of the cashiers, Tracy Harrison, turned around and tried to run to the rear of the store, but the gunman fired a shot that ripped through her buttocks and groin; she immediately fell to the floor, bleeding profusely. The taller robber grabbed money from three of the cash registers; the men then fled toward Woodrow Street. Corporal Mason testified that officers searched the area but could not locate the suspects.
 

 Arriving within minutes, Shreveport police officers and EMT personnel initially thought Ms. Harrison was dead, but they managed to revive her on the stretcher. She was driven to LSU Health Sciences Center and underwent emergency surgery to repair a severed femoral artery; without the operation she would have died. She testified that she spent eight days in the hospital and now walks with a limp.
 

 12Petective McConnell testified that Ms. Harrison apparently was popular with her customers; Shreveport Crime Stoppers was virtually inundated with calls, many of which implicated “Mario” and “Gregory” as the robbers. With this information, Det. McConnell captured Gregory Jenkins, who gave a statement implicating the defendant, Jemario Freeman.
 

 Officers then located and arrested Freeman, who gave a recorded statement on October 9. In his statement he implicated
 
 *543
 
 himself and three associates, Gregory Jenkins, Kerry Colbert and Christopher “G Face” Kimble, in planning and executing the robbery and ultimately splitting the money.
 

 Procedural History
 

 The state initially charged Freeman, Colbert, Jenkins and Kimble with one count of armed robbery. The other three conspirators pled guilty and received sentences of 10 to 15 years with no multiple billing. The state then filed an amended bill charging Freeman with armed robbery and attempted second degree murder. Prior to trial in January 2007, the state rejected Freeman’s
 
 pro se
 
 offer to plead guilty in exchange for a 15-year sentence, and Freeman elected a bench trial.
 

 The shooting victim, Tracy Harrison, and three other eyewitnesses testified about the robbery and shooting; their accounts contained slight discrepancies as to minor details. Ms. Harrison described two men entering the store, the shorter of whom fired a shot into the ceiling and told her, “B* * * ⅜, I got you now — you can’t leave.” She tried to run because she recognized he was holding a large, military-style 9 mm handgun. She had |3no recollection of events after she was hit until EMTs revived her. Customer Joella West recalled that
 
 three
 
 men entered the store, firing a total of three shots; one of the men shouted, “Give me the money.” Customer Randy Mayhorn recalled two men entering, the shorter of whom brandished a gun, fired five to eight shots and said, “Give me the money — I want all of it.” Store employee Benjamin Donathan testified that he was in the rear of the store and heard about six gunshots; one of the robbers shouted, “I’m gonna kill every ⅜ ⅜ ⅜ ⅜ ⅜ ⅜ ⅝
 

 Store manager Anthony Brewster, who was not present when the robbery occurred, testified that a total of $1,389 was taken from three cash registers that evening. Sergeant Danny Duddy of the CSI unit testified that no fingerprints were taken at the scene.
 

 Freeman’s associate, Kerry Colbert, testified that he was now serving 15 years for this crime. He testified that Freeman counted out the proceeds of the robbery, giving Colbert $250, and then burned his dark-colored jacket. Colbert claimed not to recall, however, that anyone got shot, and maintained that most of his statement to the police was false as officers pressured him to talk.
 

 Detective Rod Demery testified that he interviewed all four suspects, including Freeman on October 9, some five days after the robbery. At a “free and voluntary” hearing held during trial, Det. Dem-ery confirmed that he gave Freeman his
 
 Miranda
 
 warnings, that Freeman signed a waiver (which was introduced in evidence) and did not appear to be under the influence of drugs or alcohol, that he (Det. Demery) exerted no threats or |4coercion, and that the statement appeared to be free and voluntary. An audiotape of the statement was played in open court. In it, Freeman often mumbled and digressed, but he clearly admitted that he and three friends, Kimble, Colbert and Jenkins, planned to hit a “lick” on Thrifty Liquor: Colbert supplied two handguns, Freeman and Colbert walked into the store, Kimble stood watch outside and Jenkins drove the car. Freeman admitted firing one shot into the ceiling, one into a cigarette display and a final shot behind the counter where the cashiers were standing; he insisted he did not mean to shoot the cashier. He also admitted ordering the cashiers to give him the money, and getting about $800, which the four men divided. He maintained that he fired the gun only to get the money and get out, and he felt bad that somebody was hit.
 

 
 *544
 
 The court found Freeman guilty as charged on both counts. The state then charged him as a second felony offender, based on a prior conviction for simple burglary in May 2004. On the armed robbery charge, the court adjudicated him a second felony offender and sentenced him to 65 years at hard labor without benefits. On the attempted second degree murder charge, the court sentenced him to a concurrent 45 years at hard labor without benefits. The court denied motions for new trial, post verdict judgment of acquittal or modification of judgment, and reconsideration of sentence. This appeal followed.
 

 Discussion: Sufficiency of the Evidence
 

 By his first assignment of error, Freeman urges the evidence was insufficient to prove beyond a reasonable doubt his guilt of either charge. | J-Ie contends the state failed to prove a specific intent to kill Tracy Harrison, an essential element of attempted second degree murder.
 
 State v. Gatti,
 
 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74. In support, he cites his own statement to Det. Demery that he never intended to shoot anyone, as well as the testimony of the victim and the two customers, Mayhorn and West, none of whom heard him say he intended to kill anyone. He submits that the one store employee, Donathan, who heard the gunman threaten to kill everybody was far from the scene and did not see the shooting. He also argues that neither of the two bullets recovered from the scene was aimed in the victim’s direction, and the liquor display between himself and the victim surely obstructed his view, negating any specific intent to hit her. Finally, he submits that the testimony of his former codefendant, Kerry Colbert, was equivocal and unreliable.
 

 As to the armed robbery count, Freeman contends that the evidence established only that after the incident, some $1,389 was missing from the cash registers; the only witness to place him with the stolen money was Colbert, who again was not worthy of belief.
 

 The state responds that Freeman’s own statement to Det. Demery established that he planned a robbery, armed himself, entered the store and fired several shots, including one directly at Tracy Harrison, and later divided the proceeds with his codefendants. The state urges that the specific intent to kill may be inferred from the act of aiming and firing a weapon at another person.
 
 State v. Burns,
 
 1998-0602 (La.App. 1 Cir. 2/19/99), 734 So.2d 693,
 
 writ denied,
 
 99-0829 (La.9/24/99), 747 So.2d 1114. The state suggests that just because he fired through a liquor display did not alter his intent to hit a cashier. The state concludes that the evidence was sufficient to support both convictions.
 

 The standard of appellate review for sufficiency of the evidence is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921, cert.
 
 denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due
 
 *545
 
 process of law.
 
 State v. Sosa,
 
 2005-0213 (La.1/19/06), 921 So.2d 94. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion.
 
 State v. Higgins,
 
 2003-1980 (La.4/1/05), 898 So.2d 1219.
 

 Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. |7R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the defendant’s actions and the circumstances of the transaction.
 
 State v. Brown,
 
 2003-0897 (La.4/12/05), 907 So.2d 1, and citations therein. Specific intent to kill may be inferred from a defendant’s act of deliberately pointing a gun and firing it at a person.
 
 State v. Brown, supra; State v. Hobley,
 
 98-2460 (La.12/15/99), 752 So.2d 771.
 

 Second degree murder is the killing of a human being when,
 
 inter alia,
 
 the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1 A(l). Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27 A. The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and an overt act tending toward the accomplishment of that goal.
 
 State v. Jarman,
 
 445 So.2d 1184 (La.1984);
 
 State v. Gatti, supra.
 

 The district court obviously rejected the theory that Freeman merely fired off random shots, one of which accidentally struck the victim. Freeman admitted planning a robbery, arming himself before entering the store, and firing the weapon several times to expedite the crime. One witness heard him threaten to kill everybody, and indeed Freeman pointed the weapon and fired at a fleeing victim. Even though the line of fire may have been partly obstructed by the liquor display, these were facts from |8which a rational factfinder could infer a specific intent to kill.
 
 State v. Brown, supra; State v. Gatti, supra.
 
 This evidence proves beyond a reasonable doubt the contested element of specific intent to kill.
 

 Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64;
 
 State v. Green,
 
 38,335 (La.App. 2 Cir. 5/12/04), 873 So.2d 889,
 
 writ denied,
 
 2004-1795 (La.11/24/04), 888 So.2d 227.
 

 Freeman admitted to Det. Demery that he entered the store, brandished a weapon and demanded money, and exited with about $800 from the registers. All witnesses agreed that Freeman demanded money while pointing a gun and firing several shots, including one that struck Tracy Harrison. This evidence proves beyond a reasonable doubt the contested elements of force or intimidation and the use of a dangerous weapon.
 

 This assignment of error lacks merit.
 

 Admission of Statement
 

 By his second assignment of error, Freeman urges the court erred in admitting the audiotaped confession because it was not free and voluntary. In support he cites Det. Demery’s testimony that marijuana and other drugs were found in the house where Freeman was arrested;
 
 *546
 
 hence it was not reasonable for him to assume Freeman was not intoxicated or under the influence of narcotics. At the very least, he suggests, officers should have |¡)tested him for illegal substances. He also contends that Det. Demery did not exclude the possibility that other officers who came into contact with him earlier did not threaten him.
 

 The state responds that the argument is “mere speculation” unsupported by any record evidence. It submits that, on the record, Det. Demery advised Freeman of his rights, Freeman admitted he understood them, and did not appear to be impaired or unduly influenced.
 

 Before the state may introduce a confession into evidence, it must demonstrate that the statement was free and voluntary and not the product of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703 D;
 
 State v. Blank,
 
 2004-0204 (La.4/11/07), 955 So.2d 90. If a statement is the product of custodial interrogation, the state additionally must show that the person was advised before questioning of his rights under
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 
 Id.
 
 A trial court’s finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless not supported by the evidence.
 
 Id.; State v. Marshall,
 
 44,121 (La.App. 2 Cir. 4/8/09), 6 So.3d 1051,
 
 writ denied,
 
 2009-1113 (La.1/22/10), 25 So.3d 130.
 

 Detective Demery testified that he advised Freeman of his
 
 Miranda
 
 rights, that Freeman understood and signed a
 
 Miranda
 
 waiver, and that he (Demery) exercised no threats or coercion; the audiotape fully supports each of these points. He further testified that based on his observation of Freeman, he did not feel a drug test was necessary; again, the audiotape |inshows that despite the mumbling and evasiveness, Freeman did not sound drunk or high. Admittedly, former codefendant Kerry Colbert testified that he was “under pressure” to make a statement, but even if the district court considered this worthy of belief, there was no showing that any such pressure was applied to Freeman.
 

 The court’s finding of a free and voluntary statement is supported by the evidence. This assignment lacks merit.
 

 Excessive Sentence
 

 By his third assignment of error, Freeman urges the court erred in imposing excessive sentences. He contends that at the sentencing for armed robbery, the court noted only his youth but found that this was offset by his second felony status and the fact that the victim nearly died. On the attempted second degree murder, he contends the court failed to articulate any factual bases as required by La. C. Cr. P. art. 894.1. He submits that the concurrent sentences are tantamount to a life sentence, and asks this court to vacate and remand for resentencing.
 

 The state responds that the court substantially complied with the sentencing guidelines by noting Freeman’s age, the gravity of the offense, and the fact that he had “graduated” from a nonviolent felony of simple burglary to armed robbery. The state concludes that the concurrent sentences do not shock the sense of justice and should be affirmed.
 

 Appellate review of sentences for exces-siveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or 1nmitigating factor so long as the record reflects that it adequately considered the guidelines.
 
 State v. Marshall,
 
 94-0461 (La.9/5/95), 660 So.2d 819;
 
 State v. Taylor,
 
 42,627 (La.App. 2 Cir. 10/24/07),
 
 *547
 
 968 So.2d 1135,
 
 writ denied,
 
 2008-0424 (La.11/10/08), 996 So.2d 1063. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article.
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Taylor, supra.
 
 No sentencing factor is accorded greater weight by statute than any other sentencing factor.
 
 State v. Taves,
 
 2003-0518 (La.12/3/03), 861 So.2d 144;
 
 State v. Freeman,
 
 44,419 (La.App. 2 Cir. 6/24/09), 13 So.3d 1241.
 

 The second prong is constitutional ex-cessiveness. A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering.
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals.
 
 State v. Guzman,
 
 99-1528 (La.5/16/00), 769 So.2d 1158. The sentencing court has wide discretion in imposing a sentence within the statutory limits, and such a sentence should not be set aside as excessive in the absence of manifest abuse of that discretion.
 
 State v. Williams,
 
 2003-3514 (La.12/13/04), 893 So.2d 7.
 

 While the sentencing colloquy was perhaps not a model of Art. 894.1 compliance, the court aptly noted the lack of provocation for the shooting | ^and the nearly fatal wounds received by the victim. The court also fittingly observed that Freeman progressed from a nonviolent to a violent felony. Aside from his youth- — 18 years old at the time of this offense — Freeman does not show that any other mitigating factors would apply. Given the wanton violence and manifest cruelty of these offenses, we do not think there was much more to be said. The district court provided an adequate factual basis for sentence.
 

 As a second felony offender found guilty of armed robbery, Freeman faced a sentencing range of 49½ to 198 years at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:64 A; 15:529.1 A(1)(a);
 
 State v. Thomas,
 
 42,322 (La.App. 2 Cir. 8/15/07), 962 So.2d 1119,
 
 writ denied,
 
 2008-0316 (La.10/24/08), 992 So.2d 1031. Convicted of attempted second degree murder, Freeman faced a range of 10 to 50 years at hard labor without benefits. La. R.S. 14:30.1 B, 14:27 D(l)(a);
 
 State v. Newton,
 
 43,079 (La.App. 2 Cir. 3/19/08), 978 So.2d 1196. The sentences of 65 and 45 years, concurrent, are indeed severe but not disproportionate to the gravity of these senseless, violent offenses. We perceive no abuse of the district court’s wide discretion.
 

 This assignment of error lacks merit.
 

 Conclusion
 

 We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, Jemario Freeman’s convictions and sentences are affirmed.
 

 AFFIRMED.