LOLLEY, J.
 

 | ¶ This juvenile appeal arises from the Juvenile Court in and for the Parish of Caddo, State of Louisiana. The juvenile, K.M.T., was adjudicated a delinquent youth for the offense of attempted forcible rape, a violation of La. R.S. 14:27 and 14:42.1. The disposition was to commit him to the Office of Juvenile Justice for two years, with recommendations for the secure care and the Fast Track program. The juvenile now appeals. For the following reasons, his adjudication and disposition are affirmed.
 

 Facts
 

 On November 12, 2008, a petition was filed charging the juvenile, K.M.T., with the attempted forcible rape of the victim, T.K., on November 7, 2008, a violation of La. R.S. 14:27 and 14:42.1. A detention hearing was held, and K.M.T. was subsequently arraigned. K.M.T. entered a denial to the petition. After an adjudication
 
 *185
 
 hearing, the court took the matter under advisement to review all of the evidence and found K.M.T. to be delinquent, having-committed “forcible rape.”
 
 [1]
 
 Following the disposition hearing at which a predisposition report and a psychological pre-disposition evaluation were entered into evidence by the state, K.M.T. was committed to the Office of Juvenile Justice for two years, with recommendations for the secure care and the Fast Track program. A motion to reconsider was timely filed, which was denied without a hearing. A motion to amend and amended motion to reconsider sentence was filed under La. C. Cr. P. art. 881.1, which was treated by the court as a motion to modify under La. Ch. C. art. 910 and was |2denied. The court noted that the disposition was “clearly not excessive for attempted commission of forcible rape.” A motion to vacate adjudication and for release was filed on behalf of K.M.T., but was denied without a hearing. This appeal followed.
 

 Discussion
 

 Sufficiency of the Evidence
 

 In his first assignment of error, K.M.T. argues that the evidence introduced at the adjudication hearing of this case, when viewed under the standard set forth in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), was insufficient to prove all of the elements of the offense of attempted forcible rape beyond a reasonable doubt. Among other arguments, he maintains that the state failed to carry its burden of negating any reasonable probability of misidentification and notes the lack of physical evidence (including DNA evidence) connecting him to the crime. He also points out in detail some inconsistencies in the testimony (particularly by the victim) from prior statements and the police unit recordings.
 

 Delinquency Proceedings
 

 This court in
 
 State ex rel. E.D.C.,
 
 39,892 (La.App. 2d Cir.05/11/05), 903 So.2d 571,
 
 writ denied,
 
 2005-1568 (La.01/27/06), 922 So.2d 544, reiterated the applicable law:
 

 The unique nature of the juvenile system is manifested in its noncriminal, or “civil” nature, its focus on rehabilitation and individual treatment rather than retribution, and the state’s role as
 
 par-ens patriae
 
 in managing the welfare of the juvenile in state custody. The purpose of the Louisiana delinquency proceedings is to accord due process to each child who is | ^accused of having committed a delinquent act and, except as provided for in La. Ch. C. art. 897.1, to insure that he shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare and the best interests of the state and that in those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him. La. Ch. C. art. 801. The provisions of the Louisiana Children’s Code govern and regulate delinquency proceedings, but where procedures are not provided, the court shall proceed in accordance with the Louisiana Code of Criminal Procedure. La. Ch. C. art. 803. All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to jury trial, shall be applicable in juvenile court delinquency proceedings. La. Ch. C. art. 808.
 

 
 *186
 
 In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch. C. art. 883. In a juvenile case, the reviewing court is constitutionally compelled to review both facts and law. La. Const, art. 5, § 10(A) and (B). However, the reviewing court must recognize that the juvenile judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence. Therefore, this court grants great deference to the juvenile court’s factual findings and credibility determinations and assessment of the weight of particular testimony. Not only does the standard of review in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) apply to juvenile delinquency adjudicatory hearings, but our state constitution mandates that we determine, after reviewing the record evidence, whether the juvenile court was clearly wrong in its fact-findings. (Case citations omitted).
 

 Standard of Review
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia, supra; State v. Tate,
 
 2001-1658 (La.05/20/03), 851 So.2d 921, cert.
 
 denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App. 2d Cir.01/09/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.02/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2d Cir.01/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.02/25/09), 3 So.3d 685.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir.01/14/09), 2 So.3d 582.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the | ¿witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed, supra.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App. 2d Cir.02/13/08), 975 So.2d 753. This is equally applicable to the testimony of victims of sexual assault.
 
 State v. Robinson,
 
 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207. Such testimony alone is sufficient even
 
 *187
 
 where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.
 
 Id.
 

 Misidentification of Defendant
 

 In cases involving a defendant’s claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Hughes,
 
 2005-0992 (La.11/29/06), 943 So.2d 1047;
 
 State v. Powell,
 
 27,959 (La.App. 2d Cir.04/12/96), 677 So.2d 1008,
 
 writ denied,
 
 1996-1807 (La.02/21/97), 688 So.2d 520.
 

 A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misiden-tification as a result of the identification procedure.
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977);
 
 State v. Prudholm,
 
 446 So.2d 729 (La.1984);
 
 State v. Chaney,
 
 423 So.2d 1092, 1098 (La.1982). In
 
 Manson,
 
 the court considered these five factors in | ^determining whether the identification was suggestive: (1) the witness’s opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness’s certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. “Against these factors is to be weighed the corrupting effect of the suggestive identification itself.”
 
 Id.; State v. Martin,
 
 595 So.2d 592 (La.1992).
 

 Attempted Forcible Rape
 

 To support defendant’s conviction, the state must have proved that defendant had the specific intent to commit forcible rape and that he did an act for the purpose of, and tending directly toward, the accomplishing of his objective. La. R.S. 14:27 and 14:42.1;
 
 State v. Bailey,
 
 585 So.2d 1245 (La.App. 2d Cir.1991).
 

 Louisiana R.S. 14:42.1 provides in pertinent part:
 

 A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
 

 (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
 

 Louisiana R.S. 14:41 defines rape as follows:
 

 A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
 

 |7B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
 

 C. For purposes of this Subpart, “oral sexual intercourse” means the intentional engaging in any of the following acts with another person:
 

 (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
 

 (2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
 

 Specific intent, being a state of mind, need not be proved as a fact but may be inferred from the circumstances
 
 *188
 
 and actions of the accused.
 
 State v. Graham,
 
 420 So.2d 1126 (La.1982);
 
 State v. Bailey, supra.
 
 Additionally, it may be established through the testimony of the victim, which alone is sufficient to prove the elements of the offense of attempted forcible rape.
 
 State v. Bailey, supra.
 

 Application of Law to Facts
 

 At the adjudication hearing, the victim, T.K., testified. She stated that on the evening of November 7, 2008, she left the branch library at closing time, 6:00 p.m., and began walking to her brother’s apartment complex along a trail that led toward the sidewalk near Line Avenue in Shreveport, Louisiana. The route between the library and her brother’s apartment is approximately one block in length and took T.K. no more than four to five minutes to walk. While she was walking, she heard someone walking behind her. She turned around and saw a lady getting into a red car and a young male walking behind her. T.K. made an in-court identification of the juvenile, K.M.T., as that same young male. After T.K. crossed Line |8Avenue, she saw that K.M.T. had also crossed the street and heard him “pacing fast.” According to T.K., she turned around and “[K.M.T.] was up on me before I knew it.” K.M.T. said “Hey” to her, to which she replied, “What’s up?” Before T.K. knew it, K.M.T. “grabbed” or “snatched” her by her shirt. K.M.T. told her, “I’m fixing to get this.” Although T.K. testified that the incident occurred quickly, she remembered hearing her shirt tear and feeling her bra pop. T.K. remembered feeling K.M.T.’s weight on her body and falling back to the ground, noting that her flip-flops were slippery. While K.M.T. was on top of her, T.K. saw that K.M.T.’s pants were unzipped and he was moving his right arm trying to pull his “private part” out. T.K. described that the two “tussled” for a couple of seconds while T.K. unsuccessfully tried to push K.M.T. off of her. The cell phone she was holding flew out of her hand. She felt around on the grass for her cell phone and found a stick, using it to hit K.M.T. on the back. He then got off of her. They both paused for a second and looked at each other. She described him as a young black male wearing a red shirt, navy pants and eyeglasses with brown or black rims. According to T.K., although it was dark outside, the location of the attack was lighted by streetlights.
 

 T.K. told K.M.T. she was about to call the police and he “took off.” T.K. grabbed her cell phone, dusted herself off and called 911. She then followed K.M.T. as he ran across Line Avenue toward nearby Eden Street and into a house, clarifying that she saw “what house he ran up in.” A woman in the house at the corner of Line Avenue and Eden Street came outside. According to T.K., the woman told her that she had heard T.K.’s ^screaming and loud talking and what sounded like somebody jumping her fence. T.K. told the woman about the attack, and the woman waited outside with T.K. for the police to arrive, which took about an hour. While they waited, T.K. saw a white van pull into the drive of the house that K.M.T. entered. Then she saw K.M.T. come outside. T.K. observed that K.M.T. was still wearing red and blue clothes when a woman (who was later identified as his mother) arrived home from the grocery store. After police arrived, K.M.T. was wearing other clothes — -shorts and a T-shirt.
 

 T.K. testified that when the police arrived she related the facts of the crime to them. She positively identified K.M.T. as her assailant on the scene, stating that she was 100 percent sure and indicated that she thought he was going to hurt her during the incident. The identification occurred while K.M.T. was in the police car,
 
 *189
 
 and a police officer shined a flashlight in his face.
 

 Detective John Stratton of the Shreveport Police Department answered the emergency call. When he arrived at K.M.T.’s residence, K.M.T.’s mother said he was in the shower. According to Det. Stratton, K.M.T. fit the description of the perpetrator regarding his size and voice. Detective Stratton interviewed K.M.T. with his mother present after first advising them of their
 
 Miranda
 
 rights. K.M.T. advised Det. Stratton that he had been to the library that evening. He told Det. Strat-ton that the route he took was Line Avenue northbound from the library to Eden Street, and then down Eden Street for five or six houses to his residence. Detective Stratton noted that this was the same exact route where the attack occurred. K.M.T. | [0acknowledged to Det. Stratton that he saw the victim at the library and also on his way home from the library. Neither the victim nor K.M.T. ever said anything to lead Det. Stratton to believe that anyone else was on the path. K.M.T. further admitted to Det. Stratton that he was wearing a red shirt and blue pants earlier in the day, exactly like the clothes described by the victim.
 

 Detective Stratton said that T.K. was able to point out the house to the officers and identify KM.T.’s mother. T.K. appeared to Det. Stratton to be very clear regarding the information she gave the police on the day of the crime. The detective identified and the state introduced physical evidence at the disposition hearing, including the victim’s clothes (bra, pants and shirt). The victim’s bra strap was torn, as was the v-neck area of her shirt. Detective Stratton described the victim’s clothing and hair after the crime as “disheveled,” with her clothes appearing stretched out and scattered with leaves. Other evidence introduced by stipulation included the police unit recordings, which include statements made by K.M.T. and the victim, the victim’s recorded statement to Det. Stratton, photographs, and the crime lab report.' DNA test results were inconclusive.
 

 The defense presented the testimony of several witnesses, arguing that the testimony of these witnesses offered a possible explanation for T.K.’s accusation against K.M.T. of the attempted forcible rape. The defense also presented the testimony of Stephanie Williams, who related that she knew T.K. because he lived next door to her for about a month. She claimed that she approached T.K. after the crime and asked her who raped her. Williams claims that T.K. told her that “this man raped her.”
 

 In After an adjudication hearing, the juvenile court took the matter under advisement to review all of the evidence, including review of the police officer’s recordings (audio and video), police reports, recorded statements by K.M.T. and T.K. at the scene and various photographs. After reviewing its notes from the adjudication hearing and carefully listening to the arguments of counsel, the juvenile court stated that it was “convinced of the child’s guilt in this case” and adjudicated him delinquent. The juvenile court gave very detailed reasons to support its ruling, specifically noting that, “The victim’s statement regarding the incident, while not perfectly consistent in the various times she was called upon to make a statement, nevertheless it was highly credible for very objective reasons.” We note that T.K’s testimony regarding the attack by K.M.T. was sufficient evidence in and of itself to adjudicate him of the crime. See
 
 State v. Bailey, supra,
 
 where Bailey challenged the sufficiency of the evidence to support his conviction, arguing that the state failed to prove he had the specific intent to com
 
 *190
 
 mit rape. The
 
 Bailey
 
 court found that a logical juror obviously could conclude beyond such a doubt that the assailant intended to engage in sexual intercourse with the victim by threatening or forcing her into submission.
 
 Id.
 
 at 1248.
 

 Although K.M.T. attacks generally the sufficiency of the evidence used to achieve his adjudication, the gist of his argument is that T.K. misidentified him as her attacker.
 
 [2]
 
 K.M.T. argues that his identification atjjgthe scene was unduly suggestive because of T.K.’s prior viewing of him while he helped his mother with groceries, and the flashlight “show-up” of K.M.T. in the police car. However, considering the
 
 Mamón
 
 factors, T.K’s identification of K.M.T. was not suggestive because all of those factors weighed in favor of the reliability of the identification. It can also be considered that the “show-up” in the police car was necessary as the officers clearly did not want to arrest a juvenile for such a serious crime without a clear and unequivocal identification by the victim, as evidenced by the police unit recordings. Even so, if the identification were to indeed be considered suggestive and unnecessary, then these factors must be weighed against the corrupting effect of the suggestive identification itself.
 
 Id.; State v. Martin, supra.
 
 Although the identification of K.M.T. by T.K. no doubt weighed heavily in favor of the juvenile court’s determination that K.M.T. was the perpetrator, KM.T.’s own statements putting himself on the same path at the same time as T.K., wearing the same red and blue clothes and glasses as described by T.K., and acknowledging that he was following her closely, all clearly corroborated T.K’s identification. These circumstances and all of the other evidence produced during the investigation weigh against finding that misidentification was likely; thus the juvenile court did not err regarding T.K’s identification of K.M.T.
 

 Considering the entire record and viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support K.M.T.’s adjudication as a juvenile for attempted forcible rape. The testimony of the victim supports all of the elements of 113the crime, including intent. The juvenile court’s determination of credibility of the witnesses should be given great weight. The defense witnesses’ testimony regarding T.K.’s possible motive for allegedly fabricating the attack to get back at K.M.T. was considered and discounted as not credible. Accordingly, we conclude that this assignment of error is without merit.
 

 Disposition
 

 In his second assignment of error, K.M.T. argues that two years’ secure care was not the least restrictive disposition appropriate in this case, and a lesser disposition would have satisfied the needs of all concerned. Specifically, he argues that the disposition is excessive in light of the needs of K.M.T. and his potential for rehabilitation, and a lesser disposition with intensive probation and counseling would better address his needs and not deprecate the seriousness of the crime. We disagree.
 

 This court in
 
 State in Interest of T.L.,
 
 28,564 (La.App. 2d Cir.05/08/96), 674 So.2d
 
 *191
 
 1122, set forth the applicable law regarding review of dispositions as excessive:
 

 Under the general guidelines provided for juvenile cases in La. Ch. C. Art. 901, the adjudicating judge should impose the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the best interest of society. Thus, in any review for excessiveness, the appellate court must first ascertain whether the lower tribunal took cognizance of these criteria and whether the record reflects an adequate factual basis for the commitment imposed. Following that determination, the reviewing court need only explore for constitutional excessiveness in light of the circumstances of the case and the background of the juvenile. Of course, absent a showing of manifest abuse of the wide discretion afforded in such cases, a disposition will not be set aside as constitutionally excessive. (Citations omitted).
 

 114Louisiana Ch. C. art. 897 provides the possible dispositions for adjudication of any felony-grade delinquent act other than those described in Article 897.1. Further, La. Ch. C. art. 898(A) provides for the duration of a disposition based on a felony-grade adjudication, which shall not exceed the maximum term of imprisonment for the felony forming the basis for the adjudication. These máximums do not apply if the child reaches age 21. La. Ch. C. art. 898(C)(5).
 

 In arguing that the juvenile court failed to address the needs of K.M.T. in arriving at the disposition in this case, he basically argues that certain general guidelines provided for juvenile cases in La. Ch. C. art. 901 were not given sufficient weight. In reviewing a disposition for excessiveness, the appellate court must first ascertain whether the lower tribunal took cognizance of these criteria and whether the record reflects an adequate factual basis for the commitment imposed. The record
 
 sub ju-dice
 
 clearly shows an adequate factual basis and consideration of the criteria set forth in the guidelines. Thereafter, the review stands on the claim of constitutional excessiveness in light of the circumstances of the case and the background of the juvenile.
 
 State in the Interest of KH,
 
 612 So.2d 1036 (La.App. 2d Cir.1993). Here, the juvenile court went to great pains to consider what was best for this juvenile and the interests of society in general in rendering its disposition. The juvenile court showed leniency in not imposing the three-year disposition recommended by the state. The record makes no showing of manifest abuse of the juvenile court’s wide discretion. The disposition is not constitutionally excessive.
 

 |
 
 isIneffective Assistance of Counsel
 

 In his third and final assignment of error, K.M.T. argues that his trial counsel was ineffective for failing to prepare and investigate for both the adjudication and disposition hearings. According to K.M.T., if his trial counsel had adequately prepared for these proceedings, he would not have been adjudicated, or at least the disposition might have been less severe. On appeal, K.M.T. lists alleged deficiencies in his trial counsel’s performance that are shown by the post-trial motions, concluding that these motions indicate that trial counsel was unfamiliar with the evidence.
 

 Louisiana Ch. C. art. 809(A) provides that “[a]t every stage of proceedings under this Title, the accused child shall be entitled to counsel.”
 
 State in Interest of O.R.,
 
 1996-890 (La.App. 5th Cir.02/25/97), 690 So.2d 200. Juvenile defendants as well as adults are entitled to effective assistance of counsel.
 
 State in Interest of D. McK.,
 
 589 So.2d 1139 (La.App. 5th Cir.1991).
 

 
 *192
 
 In the adjudicative stage of juvenile delinquency proceedings, the result of which may be that a juvenile is committed to a state institution, the juvenile is entitled to the assistance of counsel.
 
 Application of Gault,
 
 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The
 
 Gault
 
 court’s holding specifically excluded proceedings conducted after an adjudication of delinquency had been made, however:
 

 We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile “delinquents.” For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor | ir,do we direct our attention to the post-adjudicative or dispositional process.
 

 Id.
 
 at 13, 87 S.Ct. 1428. The
 
 Gault
 
 court further noted, “The problems of pre-adju-dication treatment of juveniles, and of post-adjudication disposition are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process.”
 
 Id.
 
 at 31 n. 48, 87 S.Ct. 1428.
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution.
 
 State v. King,
 
 2006-1903 (La.10/16/07), 969 So.2d 1228;
 
 State v. Wry,
 
 591 So.2d 774 (La.App. 2d Cir.1991). This right to the assistance of counsel attaches only after commencement of adversarial judicial criminal proceedings. Sta
 
 te v. Carter,
 
 1994-2859 (La.11/27/95), 664 So.2d 367, 371. A defendant does not, however, have the right to counsel at all proceedings after the right has attached; the right to counsel only protects a defendant in proceedings which may be considered to be “critical stages.”
 
 Id.
 
 at 373.
 

 A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 See also State v. Marshall,
 
 44,121 (La.App. 2d Cir.04/08/09), 6 So.3d 1051. To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is |17whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Strickland, supra.
 
 The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment.
 
 State v. Grant,
 
 41,745 (La.App. 2d Cir.04/04/07), 954 So.2d 823,
 
 writ denied,
 
 2007-1193 (La.12/07/07), 969 So.2d 629.
 

 Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial,
 
 i.e.,
 
 a trial whose result is reliable.
 
 Strickland,, supra.
 
 The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable
 
 *193
 
 probability the outcome of the trial would have been different.
 
 Strickland, supra; State v. Pratt,
 
 26,862 (La.App. 2d Cir.04/05/95), 653 So.2d 174,
 
 writ denied,
 
 1995-1398 (La.11/03/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclu-sory charges will not suffice.
 
 Strickland, supra; State v. Jordan,
 
 35,643 (La.App. 2d Cir.04/03/02), 813 So.2d 1123,
 
 writ denied,
 
 2002-1570 (La.05/30/03), 845 So.2d 1067.
 

 | isHere, even if trial counsel were to be considered to have committed any unprofessional errors, the defense has failed to show a reasonable probability, that the outcome of the adjudication would have been different.
 
 See Strickland, supra; State v. Pratt, supra.
 
 The record shows sufficient basis for both the adjudication and disposition, independent from the alleged errors, including the suggestive nature of the identification, unclear photographs, and disregarded psychological report. After a careful review, we cannot say that these alleged errors by KM.T.’s trial counsel would have affected the outcome of the proceedings. So considering, this assignment is also without merit.
 

 Conclusion
 

 For the foregoing reasons, the adjudication and disposition of K.M.T. are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . KMT was charged with having committed
 
 attempted forcible rape,
 
 and no objections were entered when the court found he com-milted
 
 "forcible rape."
 
 However, as noted by the defense in brief, the custody order lists the adjudication as attempted forcible rape.
 

 [2]
 

 . K.M.T. filed a pre-adjudication Motion to Suppress Identification, a ruling on which was deferred by the juvenile court. No separate ruling was made on the motion, and K.M.T. made no contemporaneous objection to the juvenile court’s deferral and failure to issue a separate ruling upon his motion. However, it appears that the denial of the motion is implicit in the juvenile court’s ruling because the identification was obviously considered in rendering that ruling.