*162
 
 BROWN, Chief Judge.
 

 | iDefendant, Juan Rodriguez Garcia, was convicted at a bench trial of aggravated rape, aggravated kidnapping, and armed robbery. He was sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence for the convictions of aggravated rape and aggravated kidnapping and 60 years at hard labor without the benefit of probation, parole, or suspension of sentence for the armed robbery conviction; the sentences were ordered to run concurrently. Defendant was also ordered to register as a sex offender for life. Defendant has appealed his convictions for aggravated rape and aggravated kidnapping. For the reasons set forth below, defendant’s convictions and sentences are affirmed.
 

 Discussion
 

 Sufficiency of the Evidence
 

 Aggravated Rape
 

 According to defendant, there was insufficient evidence to prove the necessary elements of aggravated rape. Specifically, defendant asserts that sexual intercourse was not established because there was no evidence of “penile” penetration and therefore the act was only a “touching” best classified as sexual battery. Defendant also argues that the state failed to prove beyond a reasonable doubt that defendant was the person who assaulted the victim.
 

 La. R.S. 14:42 provides in part that:
 

 A. Aggravated rape is a rape committed ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
 

 |2(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
 

 (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
 

 (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
 

 [[Image here]]
 

 La. R.S. 14:41 provides in pertinent part:
 

 A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
 

 B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
 

 [[Image here]]
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.05/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004).
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct |sevidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that
 
 *163
 
 defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Owens,
 
 30,-903 (La.App. 2d Cir.09/25/98), 719 So.2d 610,
 
 writ denied,
 
 98-2723 (La.02/05/99), 737 So.2d 747.
 

 It is not the function of the appellate courts to reevaluate the credibility of witnesses and then proceed to overturn factual determinations of guilt. La. Const. art. 5, § 5(C);
 
 State v. Richardson,
 
 425 So.2d 1228 (La.1983);
 
 State ex rel. K.M.T.,
 
 44,731 (La.App. 2d Cir.08/19/09), 18 So.3d 183;
 
 State v. Gullette,
 
 43,032 (La.App. 2d Cir.02/13/08), 975 So.2d 753. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. White,
 
 28,095 (La.App. 2d Cir.05/08/96), 674 So.2d 1018,
 
 writ denied,
 
 96-1459 (La.11/15/96), 682 So.2d 760,
 
 writ denied,
 
 98-0282 (La.06/26/98), 719 So.2d 1048. This is equally applicable to the testimony of victims of sexual assault.
 
 State ex rel. K.M.T., supra; State v. Robinson,
 
 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207;
 
 State v. Ponsell,
 
 33,543 (La.App. 2d Cir.08/23/00), 766 So.2d 678,
 
 writ denied,
 
 00-2726 (La.10/12/01), 799 So.2d 490.
 
 See also State v. Simpson,
 
 39,268 (La.App. 2d Cir.1/26/05), 892 So.2d 694. Such testimony alone is sufficient even where the state does not introduce medical, scientific or | .¡physical evidence to prove the commission of the offense by the defendant.
 
 State ex rel. K.M.T., supra; State v. Robinson, supra.
 

 La. R.S. 14:24 defines principals as:
 

 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
 

 The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. La. R.S. 14:24;
 
 State v. Smith,
 
 513 So.2d 438 (La.App. 2d Cir.1987). Under this theory, the defendant need not actually have sexual intercourse with the victim to be found guilty of the crime.
 
 State v. Evans,
 
 27,750 (La.App. 2d Cir.02/28/96), 669 So.2d 719,
 
 writ denied,
 
 96-0793 (La.06/28/96), 675 So.2d 1119. A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial.
 
 State v. Watson,
 
 397 So.2d 1337 (La.1981),
 
 cert. denied,
 
 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981). An individual may only be convicted as a principal for those crimes for which he has personally had the requisite mental state, the requisite mental knowledge, the requisite mental intent.
 
 State v. Watson, supra.
 

 Having viewed both the direct and circumstantial evidence in the light most favorable to the prosecution, we find that it was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime of aggravated rape.
 

 |fiThe victim and her husband lived in the Towne Oaks Apartments in Shreveport, Louisiana. Just after midnight on September 9, 2006, defendant and his cousin, Alfredo Rodriguez Gonzales, both Mexican nationals working at the complex and living in the apartment below the newlywed victims, knocked on the victims’ door and asked for some water. When the wife unlocked the door, the assailants rushed in armed with a knife. They threatened to kill the victims. They tied the victims up, forced them into the back
 
 *164
 
 bedroom, demanded money, and assaulted them before eventually putting them inside a closet.
 

 The female victim testified on direct that she physically resisted the attack, but was unable to resist once she was gagged, had her comforter placed over her head, and had her hands, elbows and feet bound behind her. While she was lying facedown on the ground, defendant pulled her pants down. Defendant got on top of her and she felt something penetrate her in her private area. According to the victim, while defendant was on top of her, he still had the knife at her throat.
 

 During direct examination the victim’s husband stated:
 

 A. They [defendant and his cousin, Alfredo] took us to the bedroom, threw her on the bed and had her tied up; threw me on the floor, hog-tied me, and they began raping her.
 

 He called the attack a rape in the interview taken by the police as well. When asked about specific details, his response was:
 

 A. It was hard for me to tell. I was laying down parallel with the foot of the bed. And all I could, I mean all I could do is look over and see both, oh my God.
 

 IfiSexual Assault Nurse Examiner Chris Philipbar examined the victim shortly after the attack. Ms. Philipbar testified that there were abrasions on the victim’s genitals consistent with penetration. Ms. Phil-ipbar testified on cross-examination that “it may be possible” for these types of abrasions to be inflicted in ways that are not synonymous with sexual assault.
 

 Defendant also argues that the State failed to prove beyond a reasonable doubt that he was the man who sexually assaulted the victim because he testified that he was not the attacker and because the victim’s account of the assault changed, leaving only circumstantial evidence to convict defendant. However, the victim positively identified defendant as the perpetrator of the rape. Even so, the trial court did not have to determine that defendant was the attacker if the evidence supported that he was at least a principal to the attack. Defendant aided and abetted in the commission of the attack by helping to force the newly married victims into the bedroom and tying them up. One attacker beat the husband, giving the other attacker the chance to sexually assault the wife. Defendant had the requisite mental intent even if he was not the attacker who did the sexual assault because he knew his code-fendant had a knife and helped the sexual assault occur, watched it happen, and ensured that it could continue by subduing the husband. Thus, viewing the evidence in the light most favorable to the prosecution, the trial court could have found that defendant was
 
 a
 
 principal to the attempted aggravated rape.
 

 17Aggravated Kidnapping
 

 According to defendant, a charge of false imprisonment or second degree kidnapping is more appropriate in the instant case than the charge of aggravated kidnapping because the victims were not taken anywhere and there was no attempt to extort something of value in order to secure their release.
 

 La. R.S. 14:44 provided:
 

 Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender’s actual or apparent control:
 

 (1) The forcible seizing and carrying of any person from one place to another; or
 

 
 *165
 
 (2) The enticing or persuading of any person to go from one place to another; or
 

 (3) The imprisoning or forcible secreting of any person.
 

 The Louisiana Supreme Court has held that the crucial question in determining whether an aggravated kidnapping has occurred is not whether the defendant intended to release the victim at either the outset of the crime or indeed at any point during the crime, but “whether the defendant sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim’s fear and hope of eventual release in order to gain compliance with his demands.”
 
 State v. Arnold,
 
 548 So.2d 920, 924 (La.1989). Further, proof of intent to extort can be shown by “analyzing whether a reasonable person in the victim’s position would believe that she would not be safely released unless she complied with the [8kidnapper’s demands.”
 
 Id.; State v. Hill,
 
 40,023 (La.App. 2d Cir.09/21/05), 911 So.2d 379, 382,
 
 writ denied,
 
 06-1476 (La.03/09/07), 949 So.2d 434. Finally, movement of the victims from place to place is not required to find aggravated kidnapping under La. R.S. 14:41(3).
 
 State v. Essex,
 
 24,781 (La.App. 2d Cir.05/05/93), 618 So.2d 659;
 
 State v. White,
 
 22,946 (La.App. 2d Cir.01/22/92), 593 So.2d 882.
 

 When viewed in the light most favorable to the prosecution, we find that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of aggravated kidnapping. The state proved all necessary elements of aggravated kidnapping by proving that the victims were imprisoned with the intent to force them to give up something of value to secure their release. The jurisprudence does not require any movement of the victims to take place as imprisonment can constitute aggravated kidnapping. It was not necessary to show that the victims were moved from, or even around, the apartment. The fact that the victims were tied up and locked in a closet is sufficient. The defendant exhibited a specific intent to gain something of value from the victims using their “fear and hope of release” in order to make them comply with his demands. He used a knife to gain power over the victims and then attacked them. During the attack they were repeatedly asked where their money was and these demands were accompanied with both physical beatings and sexual assault. It is reasonable for the victims to have believed that if they could provide defendant with the money he was demanding they would be set free. Both victims testified that had they had money they 19would have given it to the defendant to try to get him to leave the apartment and they believed that defendant stayed as long as he did because they had no money to give him.
 

 The state established each element of aggravated kidnapping, thus, the trial court was reasonable in finding defendant guilty of this charge.
 

 Ineffective Assistance of Counsel
 

 The Vienna Convention on Consular Relations and Optional Protocol on Disputes is a treaty governing the consular relations between its member nations; the United States has been a member since 1969. Article 36 of the Vienna Convention on Consular Relations is the portion which pertains to the instant case and states:
 

 Communication and contact with nationals of the sending State:
 

 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
 

 a. consular officers shall be free to communicate with nationals of the sending State and to have access to
 
 *166
 
 them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;
 

 b. if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;
 

 c. consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal | inrepresentation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.
 

 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.
 

 Suppression of evidence is not an appropriate remedy for violations of the Vienna Convention.
 
 Sanchez-Llamas v. Oregon,
 
 548 U.S. 331, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006). Article 36 only provides a right for foreign nationals to have their consulate informed of their arrest or detention-not to have them consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention. As noted by the supreme court, in most circumstances, there is likely to be little connection between an Article 36 violation and evidence or statements obtained by police.
 
 Sanchez-Llamas,
 
 548 U.S. at 349, 126 S.Ct. at 2681.
 

 Defendants can, however, challenge the voluntariness of their statement and the trial court has the ability to “make appropriate accommodations to ensure the defendant secures, to the extent possible, the benefits of consular assistance.”
 
 Sanchez-Llamas,
 
 548 U.S. at 350, 126 S.Ct. at 2682.
 

 Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or |npromises. La. R.S. 15:451; La. C. Cr. P. art. 703(D);
 
 State v. Bowers,
 
 39,970 (La.App. 2d Cir.08/19/05), 909 So.2d 1038;
 
 State v. Roddy,
 
 33, 112 (La.App. 2d Cir.04/07/00), 756 So.2d 1272,
 
 writ denied,
 
 00-1427 (La.05/11/01), 791 So.2d 1288. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his
 
 Miranda
 
 rights.
 
 State v. Bowers, supra; State v. Franklin,
 
 35,268 (La.App. 2d Cir.12/19/01), 803 So.2d 1057,
 
 writ denied,
 
 02-0352 (La.02/07/03), 836 So.2d 85;
 
 State v. Roddy, supra.
 

 
 *167
 
 To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel’s performance fell below an objective standard of reasonableness when measured against “prevailing professional norms,” and (2) but for the deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 State v. Leger,
 
 05-0011 (La.07/10/06), 936 So.2d 108,
 
 cert. denied,
 
 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
 

 While the general rule is that a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App. 2d Cir.09/27/95), 661 So.2d 673.
 

 In the instant case, the record is sufficient to address defendant’s claims of ineffective assistance of counsel. Defendant has raised ineffective | ^assistance of counsel in regard to his attorney’s handling of his “freeness and voluntariness” hearing under La. R.S. 15:450-451. Defendant gave a statement to the police stating that he had been invited into the victims’ apartment with Alfredo, and that Alfredo got mad when the liquor ran out and grabbed the wife. Defendant also stated that Alfredo sexually assaulted her. Defendant admitted only to being present in the apartment and tying up the husband. He denied having a knife, sexually assaulting the wife, hitting either of the victims, or stealing anything from the apartment. The trial court found that based on the totality of the evidence the statement was free and voluntary. The officer who interviewed the defendant, Officer John Rios, testified that he informed defendant in Spanish of his
 
 Miranda
 
 rights, including his right to contact an attorney, to stop the interview at any time, and further, that in the United States people have rights which allow them to be treated fairly when charged with a crime. Defendant does not contend that the court erred in finding the statement to have been freely and voluntarily made, but rather that had his counsel explained the Vienna Convention and applicable jurisprudence more adequately the trial court would have “considered the confession in a different light.”
 

 Defendant’s claim is without merit. Contrary to appellate counsel’s assertion, defendant’s trial attorney made the court aware of defendant’s rights under the Vienna Convention, stating in part:
 

 Your Honor, just that Detective Rios knew that this defendant was not an American citizen and that he was from Mexico; he never advised him that he had a right to contact the consulate or the embassy, which is — this is a reciprocal right between Americans and people in Mexico and other countries pursuant to treaty between the U.S. government and those countries, just 113if an American is arrested in Mexico, they have the right to contact the American consulate. It’s an important law. That law was violated with this defendant. And for that reason I would ask — I would say that it’s not free and voluntary; they’re not completely advised of their rights. And although he was advised on his Miranda rights, he was not advised of this additional right he has nor was he allowed to contact the embassy or consulate to find out further information on what other rights he might have.
 

 The U.S. Supreme Court’s holding in
 
 Sanchez, supra,
 
 does not authorize the suppression of the statement; rather the court opined that in some cases defense
 
 *168
 
 counsel could raise a challenge to the free and voluntary nature of the statement which, in the instant case, defendant’s trial counsel did. We find that defendant’s trial attorney’s performance in raising the issue of defendant’s rights in the context of the “free and voluntary” hearing did not fall below an objective standard of reasonableness as required by the first prong of the test set forth in
 
 Strickland.
 

 Defendant further contends that his counsel was ineffective because he did not challenge the failure to inform defendant of his rights to consular notification before trial so that defendant could secure assistance from the Mexican Consulate. This claim is without merit.
 
 Sanchez
 
 provides that the only right a defendant has is to have his consulate informed of his arrest, not to have the consulate intervene or to have proceedings halted until the consulate can provide assistance.
 
 Sanchez-Llamas,
 
 548 U.S. at 349, 126 S.Ct. at 2681. Furthermore, defendant has not shown how he was prejudiced by this as the record shows that he was provided adequate due process in this matter.
 
 Strickland
 
 puts the burden on a defendant to show prejudice and defendant has failed to carry this burden. Defendant was interviewed |14by a police officer fluent in Spanish, he signed a form advising him of his rights in Spanish, his interview was videotaped, and he was appointed counsel to represent him. Defendant’s own attorney was likely far better to explain the United States legal system to him than any consular official would have been.
 
 Breard v. Greene,
 
 523 U.S. 371, 377, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1993). Defendant has offered no evidence whatsoever that the Mexican consulate could (or would) have offered any assistance that his attorney did not.
 
 See, Murgas v. United States,
 
 Not Reported in F.Supp.2d, 2002 WL 553462 (N.D.N.Y.2002);
 
 Polanco v. Untied States,
 
 Not Reported in F.Supp.2d, 2000 WL 1072303 (S.D.N.Y.2000). Again, defense counsel’s performance fails to meet the first prong of the
 
 Strickland
 
 test and does not constitute ineffective assistance of counsel in this instance. This assignment is without merit.
 

 Conclusion
 

 For the foregoing reasons, defendant’s convictions and sentences for aggravated rape and aggravated kidnapping are affirmed.